Our next case for argument this morning is Gulomjonov v. Merrick B. Garland. Mr. Kern, good morning. Good morning, Your Honor. May it please the Court, my name is Michael Kern, and I represent Petitioner Verratjon Gulomjonov. My client's application for asylum was denied by the Immigration Court. The denial was upheld by the Board of Immigration Appeals, which brings us before this panel this morning. In the petition for review, Petitioner raised four separate issues, but since I'm only limited to 10 minutes of my time, I would like to concentrate the argument on what I see as the most crucial question presented, that is, whether the Board of Immigration Appeals erred when it didn't simply reject, it failed to address and discuss in any manner the petitioner's argument that the regulation that sets out the procedure for filing an asylum application before the Immigration Court is contradictory to the statute that it implemented, and that his application for asylum, therefore, should have been adjudicated based on the underlying federal statute. Whether or not the implementing regulation directly contradicts the statute that it purports to implement is clearly a question of law that is within this Court's jurisdiction to answer. Moreover, this question, if it's answered affirmatively, would moot out the rest of the questions in this appeal and would justify remand of the case back to the Board. We don't need to concern ourselves with the facts of this case. The immigration judge found your petitioner to be credible and agreed that his religious conversion was a sufficient change in circumstances that materially affected his eligibility for asylum. Nonetheless, the agency still denied his application as untimely filed, so when did he need to file his application for asylum? The statute is clear. In 8 U.S.C. 1158.8.2b, the Congress said that, as a general rule, a noncitizen must file his application for asylum within one year of his or her arrival in the United States. The rule was implemented to combat what was perceived, and I believe correctly perceived, as prevalence of fraud and abuse of the asylum system. However, the same statutory provision also had a number of exceptions to the one-year filing deadline. What's applicable in this case is subparagraph D, where it says that an application for asylum of an alien may be considered, notwithstanding the one-year filing requirement, if an alien demonstrates to the satisfaction of the Attorney General the existence of changed circumstances that materially affect the applicant's eligibility for asylum. Now, please note that this statutory provision has no mentioning of any time limitation. It's not within one year as a general rule. It's not within X number of days or months. It's not a reasonable period. As long as this exception, the changed circumstances exception, is met, there is no requirement to file an application for asylum within a set period of time. But first, see this mentioning of a very vague phrase, reasonable period, in the regulation. The wording is nearly identical in two rules. One deals with filing applications for asylum before the DHS, and the other one, nearly identical, deals with filing application for asylum before the Immigration Court and the Board of Immigration Appeals. And in both cases, it says that applicants shall file application for asylum within reasonable period given the changed circumstances. Now, it's the petitioner's position that, whereas in this case, the regulation places temporal limits that are more restrictive than the statute, to the applicant's detriment, such regulations should be stricken as, again... Well, the exception doesn't contain a temporal limitation. I think that's the argument more succinctly stated. And so I think your argument, read to its logical conclusion, is that no limitation is permissible, so that an immigrant could invoke the exception for changed circumstances at any time, 20 years after entry, 30 years after entry, whenever, that no temporal limitation is permissible. Is that the logical extension of your argument? Your Honor, I understand your question. I know it sounds ridiculous, but this is what Congress said. Well, actually, the exception vests discretion in the Attorney General for changed circumstances, which permits the Attorney General to set limits on his own exercise of that discretion, including temporal limits, which is what was done in the regulation. Your Honor, I would respectfully disagree with your position. The discretion that's given to Attorney General is to see whether or not there is, in fact, a change of circumstances that materially affects the applicant's eligibility for asylum. In this case, it was religious conversion. Whether or not, once such change of circumstances has found to have taken place, there is a certain temporal limitation, again, it's up to the Congress to set. In this case, there was no such limitation. I would ask you to look at subparagraph B that handles the general one-year filing deadline. The fact that the wording is very specific in that subparagraph, and then two paragraphs down, there is no temporal limitation shows that it's not an oversight, that the Congress was very mindful of setting temporal limitations where it found doing so desirable, and where it left no such limitation in the changed circumstances instance, where, again, it was the Congressional intent, not an oversight, not a bigness or omission. Further, in its defense of the regulation, Attorney General argued that my client has waived this argument, because he didn't raise it before the immigration judge. Yet, in the same brief, in fact, in the same paragraph later on, dealing with the fact that the Board itself failed to address this argument altogether, they said, well, that was just an innocent error. Why? Because the Board has no authority to strike down the regulation. The Board is bound to follow regulations as promulgated by the Attorney General. And therefore, its failure to address this argument is of no consequence. If this argument is correct, if the inability to address validity of regulation is a valid excuse for not discussing this issue altogether, then the same should apply to the petitioner. How can he be faulted for not bringing an argument before the immigration judge, where the judge, exactly like the Board, has no authority to say, well, you're right. This regulation is out of years. I will not follow it. I will not apply it in your case. By way of comparison, when we deal with immigration cases with the requirement of exhaustion, in other words, before seeking judicial review, we have to exhaust administrative appeals. This requirement is waived, where we can prove that undoubtedly any appeal would be futile. The same is here. One cannot be held to have waived an argument because the argument wasn't raised before a tribunal that had no authority whatsoever to even consider and accept that argument. If the panel has no further questions, I'll reserve my time. Thank you. Ms. Wright. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. Similar to Petitioner, I will— Ms. Wright, we'd appreciate it if you could raise your voice. No, no, don't touch the microphone. The microphone records, but it does not amplify. This is a very big room. I will speak louder. Is that better? Like Petitioner, I will limit most of my remarks to the issue of the changed circumstances and whether or not the regulatory challenge, that it is ultra-virus. As we've argued in our brief, Petitioner's opening brief to this Court doesn't sufficiently preserve that issue because he doesn't make any arguments other than saying the statute doesn't put a limitation on changed circumstances, therefore the regulation is ultra-virus. There is no discussion and it doesn't address the Attorney General's congressionally delegated authority to implement the statute. Congress delegated to the Attorney General the discretion to go ahead and implement the, by regulation, the Immigration Act. And that includes the asylum provisions. And in this case, Congress was explicit. Asylum applicants, regardless any and all asylum applicants, have to have their application submitted to the Immigration Court or filed with DHS or the Immigration Court, depending on if it's an affirmative or a defensive application, within one year of their entry into the United States. That is a statutory mandate. But it did say that the Attorney General can have an exception to the statutory time bar for exceptional circumstances and changed circumstances. And in this case, the changed circumstances is the one that's at issue. And the Attorney General, in implementing that statute, specifically said that when it comes to changed circumstances, you have to file your application within a reasonable period after the changed circumstance that materially affects your eligibility for asylum. And in this case... So that leaves it on a case-by-case basis then? That's correct, Your Honor. And that's the advantage, that is the flexibility of the case-by-case basis. So usually this inures to the benefit of the petition? Yes, because it doesn't limit it to one year. It could be longer than a year. Those are limited, and the Board said that in matter of TWH and SWC. I think I have those correct. They said that there could be rare cases where even more than a year could be justified. But the flexibility inures to the Attorney General to go ahead and impose that reasonable period requirement in order to implement the statute as he sees fit. And in fact, in the government's view, it brings more consistency to the immigration statute because it is consistent with Congress's mandate that applicants for asylum bring their cases promptly and at least within one year of their claim arising or admission to the United States. Am I correct that this case was decided by a different IJ than the one who heard the testimony? Is that correct? No, it was a different immigration judge in the first two hearings, but the merits hearing and the oral decision was by the same judge. So the judge who decided the case actually saw the witnesses? Yes, that's correct, Your Honor. So there was a credibility judgment by the decision-maker? Yes, and the immigration judge found him to have testified credibly. There's no dispute that he said that he had converted to Catholicism and that that is a changed circumstance that materially affects his eligibility. Okay. Did the government argue that he was not credible? No. No? Okay. Thank you. I wondered. We don't argue that he's not credible. The point of contention is when the time for measuring the reasonable period starts. And on that, the parties disagree. Because the agency here measured it from February or March of 2019, and he maintains that it should have been December 2019. That goes to the timeliness. Exactly. There is one other point that I wanted to, unless the court has more questions on that. Petitioner here said that this issue would move everything else if decided in his favor. But I think the court doesn't even need to reach this issue given petitioner's treatment of the other issues that remain in his case. And in this, I'm talking about the withholding of removal, the pattern of practice, and the agency's ruling on 9, withholding of removal, that he failed to meet the particularized individual risk of harm, and also the pattern of practice. Those are higher standards than asylum. And again, he doesn't contest the individualized risk assessment, and he has waived the pattern of practice as far as the arguments that we've, that's all in the brief, in our brief. So if he can't meet the higher standard for withholding or CAT, then he can't, he necessarily can't meet the lower asylum standards of well-founded fear when it comes to those same kinds of questions. And so because those issues have already been waived at the higher standard, the government submits that it would be futile to remand this case because even if the court decides that the regulation is ultra-various, it ultimately doesn't really help. On the merits, what do you understand his argument to be from your perspective? On the merits of which argument? Whether or not the board was correct in denying him the withholding. The withholding, he's waived. But with respect to the pattern of practice, and that applies to the CAT protection claim that we also argue he has waived. But with respect to that, he hasn't pointed to any evidence, not in his opening brief to this court, that would compel reversal of the agency's determination that he hasn't met the high standard that this court has said about having to establish that there is a systematic and pervasive plan by the government to kill, torture, or I can't remember the words offhand, Your Honor, off the top of my head, but that he has not met that standard. And the record in this case does support the immigration judges and the board's determinations that although Christians in Uzbekistan are not treated well, no one disputes that, and it's not a great existence there for Christians, but it is trending positively. And this is it, if I can remember. This is the administrative record. I believe it was 558. It was the Uzbekistan reports where the report details the U.N. Special Rapporteur's 2017 visit where he issued a report afterwards saying 12 proposals for making conditions a little bit better, and after that the parliament in Uzbekistan met and implemented almost all of them. And so there are, and of course there was also the sentence at the last page of that report that says that Uzbekistan has moved from one list to a special watch list, which was an upgrade apparently because of the improvements that they had made in the treatment of Christians in that country. Unless the court has any questions. Thank you. Thank you. Mr. Kern. Thank you, Your Honor. A few responses to what my opponent has presented to this court. In terms of timeline, it was presented that normally someone would be allowed an interpretation of a reasonable period, a year or in some cases more. In this case, the court found that my client has converted to Catholicism in the end of March slash beginning of April of 2019. He submitted his application for asylum in February of 2020. There were a number of circumstances including the fact that he was in DHS custody that kind of hindered his ability to retain counsel and file his application quicker. Nonetheless, again, it was interpreted that it was not reasonably quickly under the changed circumstances. Second, I was somewhat puzzled trying to understand the counsel's argument that remand would be futile because my client failed to meet higher standards for cat relief. Well, normally failing to meet a higher, more demanding standard does not preclude someone from meeting a lower, easier to meet standard for asylum. So I would respectfully disagree with his argument that his failure to meet the requirements for Lithuanian removal and Convention against Torture would not enable him to meet the requirements for asylum. Thank you. Thank you, Your Honor. Our thanks to both counsel. The case is taken under advisement.